J-A18014-19

2020 PA Super 66

DAVID MARK BROOKS : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
GAIL S. BROOKS :
:
Appellant : No. 1747 WDA 2018

Appeal from the Order Dated November 13, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): FD-13-003932-009

DAVID MARK BROOKS : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
GAIL S. BROOKS :
:
Appellant : No. 65 WDA 2019

Appeal from the Order Dated December 12, 2018
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 13-003932-009

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

OPINION BY BOWES, J.: **FILED MARCH 16, 2020**

Gail S. Brooks ("Wife") appeals from the November 13, 2018 order that dismissed her petition to enforce the marriage settlement agreement ("MSA") she entered into with David Mark Brooks ("Husband"), upon the trial court's grant of Husband's twenty-three exceptions to the hearing officer's recommendation. We affirm.

Pursuant to the MSA, Husband was appointed custodian of ten college savings accounts established for the parties' three children. Seven of the accounts were created in accordance with the Pennsylvania Uniform Transfers to Minors Act ("PUTMA accounts"), and the other three are qualified tuition plans established pursuant to 26 U.S.C. § 529 ("529 accounts"). Husband agreed to manage the accounts "in strict accordance with all applicable laws/regulations governing 'custodial accounts,' in a fiduciary capacity" according to "his best, good faith, financial discretion." MSA, 3/14/16, at 14. Husband also agreed to supply Wife with complete account statements no later than January 15 and July 15 of each year that the accounts existed. *Id*. at 13.

On February 23, 2018, Wife filed a petition for special relief to enforce these provisions of the MSA. Therein, Wife alleged that Husband failed to provide her with the statement for one of the PUTMA accounts for youngest daughter C.B. on January 15, 2018, and that one of the other statements revealed that more than $38,000 was missing from the 529 account of daughter M.B., who "was taking a break year." Petition, 2/23/28, at ¶ 4. Wife averred that, when questioned about the missing funds, Husband indicated that he had transferred funds from M.B.'s 529 account to pay tuition for B.B., whose account contained insufficient funds to cover her tuition at the time. *See id*. at ¶ 5. Based upon Husband's purported failure to comply with the MSA, Wife requested that the court order Husband to (1) deliver the missing

statement to Wife, (2) execute documents to designate Wife as custodian of the accounts, and (3) replace the missing $38,186.13.

The trial court referred the matter to a master, who held a hearing on April 24, 2018. Thereafter, the master issued a report and recommendation in which she found that Husband did not act in bad faith when transferring money from M.B.'s account to B.B.'s, but that he did act wrongly in unilaterally doing so. **See** Master's Report, 5/11/18, at 4. The master further concluded that Husband breached his duty to keep Wife informed of the accounts. **Id**. The master recommended that, as a consequence, Husband should be required to transfer custodial responsibility of the accounts to Wife; to replace the money taken from the account; and to pay Wife $16,800 in counsel fees by submitting $300 per month directly to Wife's attorney for fifty-six consecutive months. **Id**. at 5.

Husband timely filed exceptions to the master's report and recommendation. He specified twenty-three instances in which the master erred, ranging from issues of law and contractual interpretation, to the master's factual findings or lack thereof. **See** Exceptions, 5/21/18, at ¶¶ 1-23. Wife did not file exceptions. The parties filed briefs on the merits of Husband's exceptions, and on November 13, 2018, the trial court issued an order granting all of Husband's exceptions and dismissing Wife's petition. Wife

J-A18014-19

filed a timely appeal,[1] and the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).[2] Wife presents the following questions for this Court's resolution:

> 1. The lower court erred and/or abused its discretion by granting all 23 of [Husband]'s exceptions and dismissing [Wife]'s Petition for Special Relief for enforcement of the parties' marital settlement agreement.
>
> 2. Does the marriage settlement agreement, as governed by applicable state and federal law, permit [Husband] to "roll over" 529 funds from the college savings account of one child to the college savings account of another child, without prior notice to [Wife], and without a prior order of court in the absence of [Wife]'s consent to the "rollover" of 529 funds?
>
> 3. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that [Husband] breached his obligation to keep Wife informed via complete account statements as required and intended by the language in the parties' MSA.
>
> 4. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in failing to

_____

[1] The trial court subsequently entered an order, dated December 12, 2018, that purported to amend the November dismissal order to clarify its finality. *See* Order, 12/17/18, at ¶ 2. Since the parties' divorce and the ancillary economic claims were fully resolved in 2016, we conclude that the November 13, 2018 order dismissing Wife's petition to enforce the MSA was final and appealable. **Accord Schultz v. Schultz**, 70 A.3d 826, 828-29 (Pa.Super. 2013) (explaining that denial of request to enforce a prior order is an appealable order if the order sought to be enforced was a final order). Further, Wife does not argue that the December order effectuated any substantive change, and we discern none. Therefore, we determine that Wife's issues are properly before us at 1747 WDA 2018, and dismiss the appeal filed at 65 WDA 2019 as duplicative.

[2] The trial court did not order Wife to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed.

- 4 -

find that the Marital Settlement Agreement did not require notice or permission to transfer funds from an account.

5.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that the language on page 54 of the IRS publication 970 states that the trustee must receive an instruction from the beneficiary of the account directing the trustee to change the name of the beneficiary of the account to that of his brother (or in this case, sister).

6.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that it was wrong for [Husband] to unilaterally determine that he could move funds from one child's account to another's without any permission to do so.

7.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that [Husband] breached his obligation to keep Wife informed via complete account statements as required and intended by the language in the MSA.

8.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that [Husband], under paragraph 5.B.ii(d) of the MSA, failed to comply with his affirmative obligation to Wife and his daughters, [M.B.] and C.B.

9.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that Husband's actions were intentional.

10.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in finding that Husband went around the strict fiduciary requirements governing the actions of a trustee/guardian with respect to his two younger daughters.

11.     The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in failing to find that Husband, as custodian of the accounts, had the right to manage the accounts in strict accordance with all applicable

law/regulations governing the accounts as set forth in paragraph 5.B. iii of the MSA.

12. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in recommending that Husband transfer to Wife full custodial responsibility for the 529 and PUTMA accounts for C.B. and the remainder funds in the 529 account for [M.B.]

13. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in recommending that Wife shall manage these funds from this time forward.

14. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in recommending that Husband shall pay the sum of $38,186.13 back into [M.B.'s] 529 account via a loan or any other means so that [M.B.] has the opportunity to pursue her education without the necessity of taking out school loans.

15. The lower court erred and/or abused its discretion by granting [Husband]'s exception that the master erred in recommending that if there is any money remaining in [B.B.]'s 529 account, that money will be transferred back into [M.B.]'s account and shall be applied towards the $38,186.13 debt.

Wife's brief at 5-9 (unnecessary capitalization omitted). [3]

We begin with our standard of review. Interpretation of the MSA is a question of law governed by contract principles. *See*, *e.g.*, *Melton v. Melton*, 831 A.2d 646, 653 (Pa.Super. 2003). Consequently, we apply *de novo*, plenary review. *See Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa.Super. 2005). However, "the trial court is the sole determiner of facts

_____

[3] Wife's fifteenth question is not addressed in the argument portion of her brief. As Wife has opted to abandon this claim of error, we decline to address it.

- 6 -

and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Id*. (internal quotation marks omitted). Further, we are bound by the trial court's credibility determinations. *See id*. at 1257-58.

Although Wife states and argues fourteen individual questions to this Court, the two issues that the trial court discussed in its Pa.R.A.P. 1925(a) opinion addressed them all. Those issues are whether Husband breached: (1) any of his obligations in managing the children's accounts, or (2) his duty to keep Wife informed through supplying account statements.[4] *See* Trial Court Opinion, 2/12/19, at 2, 4.

We first consider whether Husband's act of moving money from one child's 529 account to that of another constituted a breach of the MSA. Relevant to this issue, the MSA provides as follows:

> 5.    Both parties recognize they established with marital income prior their June 4, 2013 separation date, ten (10) presently existing accounts for the express purpose of providing for their three (3) daughters' undergraduate college education expenses (collectively the "College Savings Accounts").
>
>          A.    Those College Accounts are as follows:
>
>                  i.      [529 account held by Husband for B.B.]
>                  ii.     [529 account held by Husband for M.B.]
>                  iii.    [529 account held by Husband for C.B.]
>                  iv.     [PUTMA Account for M.B.]

---

[4] We remind Wife that the statement of questions involved is to "state concisely the issues to be resolved . . . without unnecessary detail." Pa.R.A.P. 2116(a). Moreover, "[t]he statement will be deemed to include every subsidiary question fairly comprised therein." *Id*. As such, stating such a volume of specific, yet overlapping, questions was neither necessary nor appropriate.

       v.     [PUTMA Account for C.B.]
      vi.    [PUTMA Account for M.B.]
    vii.   [PUTMA Account for C.B.]
   viii.  [PUTMA Account for B.B.]
     ix.   [PUTMA Account for C.B.]
      x.    [PUTMA Account for M.B.]

   B.   Regarding the College Savings Accounts, Wife and Husband stipulate as follows:

      i.   The College Savings Accounts shall be deemed to belong to [B.B.], [M.B.,] and [C.B.], respectively; consequently, the College Savings Accounts are not part of their "marital estate".

      . . . .

    iii.  As the Custodian of these College Savings Accounts, in strict accordance with all applicable laws/regulations governing "custodial accounts", in a fiduciary capacity, Husband shall have the right to manage the College Savings Accounts in his best, good faith, financial discretion.

MSA, 3/14/16, at 13-14.

Before we address Wife's arguments concerning Husband's alleged breach of these provisions, an examination of the differences between PUTMA accounts and 529 accounts is warranted. "The purpose of PUTMA is to provide an inexpensive, easy way for giving property to minors." ***Radakovich v. Radakovich***, 846 A.2d 709, 717 (Pa.Super. 2004). To make such a transfer, in the context of money, one must pay or deliver the funds "to a broker or financial institution for credit to an account in the name of the transferor, an adult other than the transferor or a trust company, followed in substance by

the words: 'as custodian for (name of minor) under the Pennsylvania Uniform Transfers to Minors Act.'" 20 Pa.C.S. § 5309(a)(2).

A transfer of funds into a PUTMA account constitutes an irrevocable gift to a minor, with the property becoming "indefeasibly vested" in the account's beneficiary. 20 Pa.C.S. § 5311(b). The custodian of the PUTMA account may only use the property for that minor's benefit, and manages the minor's property until she reaches the age of twenty-one, at which time the custodian must deliver the property and any proceeds to the beneficiary. **See Sternlicht v. Sternlicht**, 876 A.2d 904, 910 (Pa. 2005). Hence, regardless of the parties' MSA, the funds in a PUTMA account would not have been part of the marital estate because they are owned by their beneficiaries, not Husband or Wife as donors or Husband as the custodian.

A 529 account, on the other hand, is a mechanism for tax-deferred savings for educational expenses. **See** 2019 IRS Publication 970, "Tax Benefits for Education," at 57 (hereafter "Publication 970"). While the contributions to 529 accounts are "**treated as** a completed gift to the beneficiary," 26 U.S.C. § 529(c)(2)(A)(i) (emphasis added), "unlike PUTMA accounts, 529 Plans remain the property of the account holder[.]" *Slicing Up the Pie: Property Distribution in Pennsylvania* at 39 (David L. Ladov ed., PBI

Press, 3d ed. 2016) (hereafter "Property Distribution").[5]   As such, the designated beneficiary of a 529 account may be changed, or money in a 529 account for one beneficiary may be rolled over to the 529 account of another beneficiary.  *See* Publication 970, *supra* at 60-61.

Further, 529 accounts are marital assets that may be rolled over from one spouse to the other upon divorce.   *See* *Property Distribution*, *supra* at 39.   However, instead of distributing the 529 plans through settlement agreement or litigation of economic claims, "the parties may agree to maintain them for the purposes for which they were intended, i.e., the support and education of the children."  *Id*.  "In other words, these accounts, though technically marital assets, may be exempted from the estate by the consent of the parties."  *Id*.

In summary, while a custodial account created pursuant to PUTMA is not part of a marital estate subject to equitable distribution, because the money was indefeasibly vested in the minor at the time it was deposited into the account, 529 account funds are owned by the account holder, and remain in the marital estate absent an agreement otherwise.

Here, as quoted above, the MSA specified that the parties agreed not to divvy up the children's 529 account funds, but instead excluded the funds

---

[5] There is a dearth of case law on equitable distribution and 529 plans. However, Wife, Husband, and the trial court all cite this PBI publication as authority that supports their respective positions.  *See* Wife's brief at 22-23; Husband's brief at 21; Trial Court Opinion, 2/12/19, at 2-3.

from marital estate so that they would be used for the original purpose - the girls' college education. Father remained the account holder, and was tasked with managing them in good faith and in accordance with the law. As detailed above, putting the MSA aside, Husband's transfer of funds among the 529 accounts was well within the bounds of the applicable law. The question we must decide is whether the legally-permissible transfer violated the MSA.

Wife's arguments on this front are voluminous. First, she contends that the MSA converted the 529 account assets into the assets of each account's beneficiary; in other words, that it converted the 529 accounts into PUTMA accounts. *See* Wife's brief at 23-24. Wife attempts to buttress this position by citing 26 U.S.C. § 529(c)'s indication that a contribution to a 529 plan is treated as a completed gift to the beneficiary. *See* Wife's brief at 24. Thus, Wife posits, when the MSA appointed Father to manage the children's money, he became a trustee. *Id*. at 24-26. Wife maintains that, as trustee of M.B.'s 529 "trust" account, of which Wife was also a settlor, the Uniform Trust Act stripped Husband of any authority to revoke or modify it without her consent and the consent of M.B. *Id*. at 28, 35-36 (citing 20 Pa.C.S. §§ 7740, 7740.1). Given this misfeasance by Husband, Wife concludes, the court should have ordered Husband to repay the funds into M.B.'s account and to relinquish management of all of the accounts to Wife. *Id*. at 38-41

We disagree. The MSA did not convert the 529 accounts into PUTMA accounts. There is no indication that the parties agreed to effectuate an

irrevocable transfer to M.B. of the assets of her 529 account by conveying the funds to Husband "as custodian for [M.B.] under the Pennsylvania Uniform Transfers to Minors Act," which is necessary under 20 Pa.C.S. § 5309(a)(2). Nor was a trust created, as the MSA did not indicate that Husband would hold the funds "as trustee."[6]  **See** 20 Pa.C.S. § 7731(1), (2).

Rather, just as 26 U.S.C. § 529(c)(2)(A)(i)'s provision that 529 plan contributions are "treated as" completed gifts for tax purposes does not remove ownership of the assets from residing in the account holder, who may opt to withdraw it and face the tax consequences, the MSA's language "deeming" the 529 assets to belong to the parties' children for purposes of removing the assets from the marital estate did not serve to transfer legal ownership of each account to its respective beneficiary.[7]  We find the language of the MSA to indicate that, although the rest of the marital estate was being divided upon the parties' divorce, the status quo would continue as to the 529 accounts.  That status quo was that Husband remained free to manage the accounts in any manner that both complied with the laws governing 529 accounts and was undertaken "in his best, good faith, financial discretion." MSA, 3/14/16, at 14.

---

[6] We note that the special master correctly indicated that Husband was not a trustee of the 529 accounts.  **See** N.T., 4/24/18, at 74-75.

[7] Indeed, the special master indicated that, while the assets of M.B.'s PUTMA accounts belonged to M.B., "the 529 account[ is] to be used for her benefit, but [it is] not her money[.]"  N.T., 4/24/18, at 48.

The trial court offered the following explanation of why Husband's actions did not breach any duty he owed under the MSA:

[Husband]'s strategy managing the 529 accounts [was] to move funds from one child to another as needed. . . . [Husband] transferred M.B.'s 529 funds to pay for B.B.'s college tuition, but this does not breach the MSA. [Husband] reasons B.B. was in immediate need of college funding, whereas M.B. was not because she was taking a break from post-secondary education. M.B. was not participating in post-secondary education and B.B. had insufficient funds in her 529 account at the time [Husband] transferred the $38,186.13. [Husband]'s decision to transfer the 529 funds complies with the intended purpose of the accounts set forth in the MSA.

The 529 accounts were created after the birth of each child and funded during and after the marriage. The 529 funds were primarily obtained as gifts from [Husband]'s parents and grandparents. [Husband] and his family continued to contribute to the 529 funds post separation. . . . The MSA establishes [Husband] as the 529 account holder and grants him the discretion to transfer funds appropriately from one child to another without obtaining instruction or consent from the original beneficiary. Similarly, the MSA does not explicitly state [Husband] must obtain [Wife]'s consent to move funds from one beneficiary to another, and the MSA does not state a court order is necessary to do so either. [Husband] does not have the same discretion to transfer funds among the children's PUTMA accounts, but PUTMA funds were never transferred. Therefore, [Husband] has properly managed each of the children's college savings accounts pursuant to the MSA.

Trial Court Opinion, at 3-4 (citation omitted).

We agree. Although the MSA constrained Husband's authority to use 529 plan funds for anything other than educational expenses, it did not alter Husband's authority to continue using his best judgment to address the children's ongoing educational needs. Based upon our review of the law detailed *supra*, as well as the certified record before us, we conclude that the

trial court properly applied the law and exercised its discretion to hold that Husband's management of the children's college funds did not constitute a breach of the MSA.  No relief is due.

Wife's other allegations of Husband's breach of the MSA concern his alleged failure to comply with his duty to keep Wife informed about the accounts.  Specifically, the MSA imposes the following responsibilities upon Husband in this regard:

> c.      For so long as these College Accounts continue to exist, for each such College Account, on a semi-annual basis (i.e. by no later than January 15th AND July 15th of every applicable year, with "time expressly being of the essence"), Husband shall have the explicit affirmative obligation to provide Wife with a complete account statement.
>
> d.      If Husband subsequently fails to comply with his affirmative obligation described in Paragraph 5(B)(ii)(c) above, then this shall constitute a default by Husband of his obligations incident to this AGREEMENT, thereby entitling Wife:
>
> . . . .
>
> II.     To additionally present a Petition for Special Relief to this Court, requesting that Husband be required to execute all documents necessary to designate Wife as the "Custodian" of all such College Savings Accounts (in lieu of Husband).

MSA, 3/14/16, at 13-14.

Wife's initial complaint was that Husband failed to provide her with a statement in January 2018 for one of C.B.'s PUTMA accounts.  *See* N.T., 4/24/18, at 40.  However, Husband testified that, when preparing for the hearing, he discovered the existence of more detailed statements for the 529

accounts than the ones he had been providing to Wife. Specifically, the 529 accounts are Scholars Choice 529 accounts Husband obtained through his broker, Wells Fargo. *Id*. at 114. He had provided to Wife the statements that he obtained from Wells Fargo, which contained only summary account balances. *Id*. Subsequently, Husband learned that Scholars Choice itself has a website with more detailed information. *Id*. at 115. However, Husband had neither received the more detailed statements in the mail nor received notice of their availability. *Id*. On appeal, Wife latches upon this testimony to argue that Husband conceded that he breached his MSA obligations. *See* Wife's brief at 29-30.

The trial court addressed Wife's position as follows.

[Wife] argues [Husband] failed to supply a certificate of deposit ("CD") statement in January 2018 for [C.B.'s] PUTMA account [referenced in paragraph 5(A)(vii) of the MSA]. However, there was no statement to provide in January 2018 because it no longer existed. The CD matured in July 2017 and the funds moved into C.B.'s [PUTMA account referenced in paragraph 5(A)(v) of the MSA]. [Wife] was provided with statements showing the increase in value of [the latter account] from the CD maturation. [Wife] does not contest any other instances where [Husband] has failed to provide statements for the PUTMA and 529 college savings accounts. In fact, the record reflects [Husband] has sent [Wife] complete Wells Fargo statements before January 15th and July 15th of each year. Therefore, [Husband] did not breach his obligation to provide [Wife] with account statements pursuant to the MSA.

Trial Court Opinion, at 4-5.

Again, we find the trial court's determination to be legally sound and supported by the record. As such, Wife's remaining arguments entitle her to no relief.

Appeal at No. 65 WDA 2019 dismissed. Order affirmed at No. 1747 WDA 2018.

Judge Musmanno joins the opinion.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/16/2020