2022 PA Super 59

| | | |
|---|---|---|
| JOHN P. ZABROSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GINA SMITHBOWER-ZABROSKY | : | No. 487 WDA 2021 |

Appeal from the Order Entered March 15, 2021,
in the Court of Common Pleas of Cambria County,
Civil Division at No(s): 2016-3217.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:                    **FILED: APRIL 7, 2022**

In this matter, Appellant John P. Zabrosky (Husband) appeals the order issued by the Cambria County Court of Common Pleas, finding him in contempt of the Marriage Settlement Agreement that he executed with Appellee Gina Smithbower-Zabrosky (Wife).   Under the terms of the Agreement, Husband represented that he made a full and fair disclosure of his assets, and he further agreed not to remove money from the accounts set aside for the children's post-secondary education.  Wife brought a "Petition for Contempt, to Compel, and for Sanctions," alleging that Husband violated these terms when he withdrew tens of thousands of dollars from the accounts to finance his divorce and custody litigation.  The trial court found Husband in contempt and awarded Wife a total of $58,767.10 plus $300 in counsel fees.

_____

[*] Retired Senior Judge assigned to the Superior Court.

To effectuate Husband's repayment, the court converted the award to Husband's child support obligation and attached various purge conditions. After review, we affirm in part and reverse in part.

The record discloses the following factual and procedural history: The parties separated in June 2016, and two years later they executed a Marriage Settlement Agreement. *See* Marriage Settlement Agreement, dated 6/6/18, at ¶¶ 1-20. The trial court issued the divorce decree on August 16, 2019. During their marriage, the parties established a "529 account" (sometimes referred to as "529 Plan") for each of their two children, ages 11 and 14. A 529 account is a mechanism for tax-deferred savings for educational expenses. *See* 2019 IRS Publication 970, "Tax Benefits for Education," at 57; *see also* 26 U.S.C. § 529 ("Qualified tuition programs"). The parties also purchased tuition credits as a part of their 529 accounts, which meant that the financial benefit of the 529 accounts was greater than its actual dollar value.

The Marriage Settlement Agreement addressed the disposition of this asset:

> As of the date of this Agreement [(June 6, 2018)], neither party, without the prior knowledge, and written consent, of the other party shall remove any and/or all monies from any and/or all of the 529 accounts. Either or both parties may add funds to any and/or all of the 529 accounts at any time that they may individually choose to do so. The parties hereby confirm that the 529 accounts are for the education of the parties' two minor children and shall be used solely for their post-high school educational needs. Upon each child beginning a course of post-high school education,

- 2 -

requite funds will be withdrawn to apply toward any and all tuition, room and board, and/or book expenses.

Marriage Settlement Agreement, at ¶2.02(H).

Following the issuance of the divorce decree, Wife discovered that Husband withdrew $2,000 from the children's 529 accounts to pay for the custody litigation. Husband eventually repaid the fund, but Wife's discovery led her to seek a full audit of the 529 accounts.

Wife learned that, prior to the entry of the Marriage Settlement Agreement, Husband had withdrawn $21,572.53 from the children's 529 accounts to finance his portion the litigation. Wife filed a "Petition for Contempt, to Compel, and for Sanctions." Wife claimed that Husband was violated Paragraph 2.02(H) (prohibiting withdrawals from the 529 accounts). She also claimed Husband violated Paragraph 8.01, wherein the parties represented that they had made a full and fair disclosure:

> Each party covenants with and represents to the other that he or she has made a full and fair disclosure of all property and interests in property owned or believed to be owned by her or him.

Marriage Settlement Agreement, at ¶8.01.

Wife sought Husband's repayment of the principal sum, but she also requested "interest" totaling $37,197.57. The "interest" figure represented the lost benefit of the tuition credits. According to Wife, both the principal component and the "interest" component were necessary to the award, in order to return the accounts back to the value they would have been had

Husband never withdrawn the funds. Wife also requested $300 in counsel fees. Notably, Wife also sought that any award be converted to arrears on Husband's child support obligation, so as to prevent Husband from defeating the award should he file for bankruptcy.

The trial court scheduled a hearing on Wife's petition for January 11, 2021. The hearing was held remotely, in accordance with the Covid-19 protocols. The parties proceeded with a mix of summary testimony and direct testimony. Husband acknowledged that he withdrew from the 529 accounts, but claimed he put Wife on notice that he was doing the same. Husband testified that he asked Wife: "Why are you doing this [litigation]? You're wasting the kids' college fund." N.T., 1/11/21, at 27, 33. Husband testified that he "figured [Wife] would understand what [he] was talking about." *Id.* at 28. Husband also argued that his intent was not malicious, that he thought he could take from these accounts as they were in his name. *Id.* at 33.

The trial court ultimately granted Wife's petition. The court found Husband in contempt, and it granted Wife's relief in full. The court's order directed the Cambria County domestic relations section "to add the sum of $21,572.53 principal and $37,197.57 interest to Husband's child support arrearages[.]" *See* Order of Court, 3/15/21, at ¶¶1-6. The court directed the domestic relations section to increase Husband's monthly arrearage payment to $250. *Id.* Finally, the order provided that Husband may purge himself of the contempt by: paying support arrearage payments on time and in full every

month; providing written verification of his savings, investments, and/or other accounts to Wife's counsel; by liquidating or borrowing all reasonable sums to satisfy, in full or in part, Husband's child support arrearages; and by remitting to Wife $300 in counsel fees. *See id.*

Husband timely-filed this appeal. He presents the following issues, which we reorder for ease of disposition:

1. Did the trial court err and/or abuse its discretion in finding Husband in contempt of the parties' Divorce Decree under all the facts and circumstances of this case and the law applicable thereto?

2. Did the trial court err and/or abuse its discretion in finding that Husband had violated the parties' [MSA] by withdrawing money, between the date of separation and the date of the [MSA], from the 529 accounts that Husband had established and funded for the parties' children's education in the absence of any order or agreement prohibiting such withdrawals?

3. Did the trial court err and/or abuse its discretion in awarding interest on the withdrawn funds in the absence of evidence or legal authority to support the award and by directing that the interest on the withdrawn funds be added to the arrearages in the parties' child support case?

4. Did the trial court err and/or abuse its discretion by directing that the withdrawn funds be added to the support arrearages in the parties' child support case?

5. Did the trial court err and/or abuse its discretion in the conditions it imposed on Husband to purge himself of the contempt adjudication?

Husband's Brief at 6.[1]

At the outset, we observe our relevant standards of review. Marriage settlement agreements, whether prenuptial or postnuptial, are analyzed in accordance with contract principles. *Lewis v. Lewis*, 234 A.3d 706, 711 (Pa. Super. 2020) (citation omitted). In determining whether the trial court properly applied contract principles, the reviewing Court must decide, based on all of the evidence, whether the trial court committed an error of law or an abuse of discretion. *Lewis*, 234 A.3d at 711 (citation omitted).

We have said an abuse of discretion

> is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that an appellate court is of the opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and the effect of such facts as are presented in support of

---

[1] We note with disapproval Husband's concise statement of matters complained of on appeal, which listed 15 issues. *See* Pa.R.A.P. 1925(b) (relating to concise statements). We join the trial court's admonishment that the sheer number of Husband's alleged errors lacks focus and succinctness. *See* Trial Court Opinion, 6/14/2021 (T.C.O.) at 13-14. Noncompliance with Rule 1925(b) may result in waiver. *See, e.g., Commonwealth v. Reeves*, 907 A.2d 1 (Pa. Super. 2006) (observing that concise statement which is too vague or too verbose frustrates the ability of both the trial court and the appellate court to review the appeal).

Here, however, the trial court was able to provide an extremely thorough and complete review of Husband's primary claims – namely, the five appellate issues he presents above. Moreover, when comparing Husband's concise statement with his statement of questions involved, each appellate issue constitutes an appropriate consolidation or restatement of those matters listed in his concise statement. Waiver is not appropriate in this instance.

the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law.

*Id.* (citation omitted).

To the extent we must decide a question of law, however, our standard of review is *de novo*, and our scope of review is plenary. *Id.* (citing **Stoner v. Stoner**, 819 A.2d 529, 530 n.1 (Pa. 2003)).

Although this case concerns a marriage settlement agreement, it also involves contempt. Section 3502 of the Divorce Code delineates the powers of the court when a party fails to comply with the terms of a private agreement between the parties. **See** 23 Pa.C.S.A. § 3502(e). One of those enumerated powers is the court's power to find a party in contempt. **See** 23 Pa.C.S.A. § 3502(e)(9). To that end, we also observe that we review contempt orders for an abuse of discretion:

> The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings.

**Thomas v. Thomas**, 194 A.3d 220, 225-26 (Pa. Super. 2018) (citations omitted).

In his first appellate issue, Husband argues that the trial court lacked the ability to find him in contempt, because the Marriage Settlement

Agreement was "neither merged, nor incorporated into [the divorce] decree."

*See* Husband's Brief at 18 (citing Divorce Decree, 8/16/2019); *see also*

Marriage Settlement Agreement at ¶10.01. Husband's claim lacks merit.

As Husband even acknowledges, the Divorce Code authorizes a trial

court to enforce the terms of marriage settlement agreement as if it were an

order of court, so long as the agreement provides nothing to the contrary.

Section 3105(a) of the Code states:

> **(a) Enforcement. --** A party to an agreement regarding
> matters within the jurisdiction of the court under this part,
> ***whether or not the agreement has been merged or***
> ***incorporated into the decree***, may utilize a remedy or
> sanction set forth in this part to enforce the agreement to
> the same extent as though the agreement had been an
> order of the court except as provided to the contrary in the
> agreement.

23 Pa.C.S.A. § 3015(a)(emphasis added).

Here, the parties did not merely acquiesce to the court's enforcement

powers by failing to include a provision to the contrary. Instead, the parties

explicitly included a provision in their Marriage Settlement Agreement

authorizing the trial court to enforce its terms:

> The Court of Common Pleas of Cambria County,
> Pennsylvania shall have authority to enforce the terms and
> provisions of this instant Marriage Settlement Agreement,
> to enforce the contractual obligation of the parties. This
> Marriage Settlement Agreement shall not be merged in any
> such Decree but shall in all respects survive the same and
> be forever binding and conclusive upon the parties.

Marriage Settlement Agreement at ¶10.01.

The parties also agreed that the Marriage Settlement Agreement shall be interpreted in accordance with Pennsylvania law and that our courts will have subject matter jurisdiction. **See** Marriage Settlement Agreement at ¶15.01. The parties' divorce decree provides further: "The provisions of the Marriage Settlement Agreement shall be enforceable as if they arose from an original court order, are contractual and non-modifiable." **See** Divorce Decree, 8/16/2019.

Having established that the trial court could enforce the parties' Marriage Settlement Agreement, we reiterate that the Divorce Code authorizes a trial court to find a party in contempt when that party "has failed to comply…with the terms of an agreement[.]" **See** 23 Pa.C.S.A. § 3502(e)(9). As such, Husband's first issue is without merit.

In his second appellate issue, Husband argues that the court's contempt finding was erroneous, because he did not violate the Marriage Settlement Agreement. In order to establish that a party is in civil contempt, the petitioner must prove, by a preponderance of the evidence, three elements: 1) that the contemnor had notice of the specific order that he or she is alleged to have disobeyed; 2) that the act that constituted the contemnor's violation was volitional; and 3) that the contemnor acted with wrongful intent. **See B.A.W. v. T.L.W.**, 230 A.3d 402, 406 (Pa. Super. 2020) (citing **Thompson v. Thompson**, 187 A.3d 259, 263 (Pa. Super. 2018) (citation omitted), *aff'd* 223 A.3d 1272 (Pa. 2020)).

The court found Husband in violation of two separate provisions: Paragraph 2.02(H) and Paragraph 8.01. We discuss each alleged violation in turn. Paragraph 2.02(H) of the Agreement provides, in relevant part: "**As of the date of this Agreement**, [(June 6, 2018)] neither party…shall remove any or all monies from any and/or all of the 529 accounts." Marriage Settlement Agreement at ¶2.02(H) (emphasis added). Husband explains that he withdrew the funds from the accounts between 2016 and 2018, **before** the parties executed the Marriage Settlement Agreement. Thus, Husband concludes that his actions could not have violated an agreement that did not yet exist.

We agree with Husband on this point. Before the trial court could find Husband in contempt under Section 3502(e)(9), the court had to first determine that Husband failed to comply with the terms of the Marriage Settlement Agreement. However, Paragraph 2.02(H) clearly states that Husband could not remove funds from the 529 accounts "as of the date of this agreement." This is a forward-looking provision. Husband's actions prior to the execution of the Marriage Settlement Agreement could not have violated Paragraph 2.02(H), which only concerned actions taken after June 6, 2018.

However, Paragraph 2.02(H) was not the only provision that trial court determined Husband had violated. In addition to Paragraph 2.02(H), the trial court also determined that Husband violated Paragraph 8.01, which governs full and fair disclosure of assets. Paragraph 8.01 states: "Each party covenants with and represents to the other that he or she has made a full and

fair disclosure of all property and interests in property owned or believed to be owned by her or him." **See** Marriage Settlement Agreement, at ¶8.01.

The trial court determined that Husband violated Paragraph 8.01 when he failed to inform Wife of his earlier withdrawals from the 529 accounts. Reading Paragraph 8.01 in conjunction with Paragraph 2.02(H), the court determined that Husband misrepresented to Wife that the 529 accounts remained undisturbed, so as to induce Wife into signing the Marriage Settlement Agreement. **See generally** Trial Court Opinion, 6/14/2021 (T.C.O.), at 6-10. The trial court opined:

> The Marriage Settlement Agreement reaffirms the purpose of the plans – to provide for the higher education of the children: "The parties hereby **confirm** that the 529 accounts are for the education of the parties' two minor children and shall be solely used for their post-high school educational needs." Marriage Settlement Agreement at ¶ 2.02(H)(emphasis added). By **confirming** that the 529 Plans were for the education of the children, Husband implicitly **represented** to Wife that he had not removed the funds from the 529 Plans between the date of separation and the date they executed the Marriage Settlement Agreement.

T.C.O. at 5 (trial court's emphasis original).

Husband challenges the trial court's determination that he violated Paragraph 8.01 by reiterating that he could not violate the terms of an agreement that had yet to exist. **See** Husband's Brief at 28-29. But on this point, Husband's reasoning does not hold. The question is no longer when Husband withdrew funds from the accounts. Now the question is whether he failed to make a full and fair disclosure. In essence, the inquiry is whether

Husband breached the disclosure provision of the Marriage Settlement Agreement.[2]

To resolve whether Husband violated the full and fair disclosure provision, we are not without guidance. In ***Hess v. Hess***, 580 A.2d 357 (Pa. Super. 1990), the parties entered into a property settlement agreement as part of their divorce action. Per the terms of their property settlement agreement, the parties agreed to make a full, complete and accurate disclosure of all assets. ***Hess***, 580 A.2d at 358. The husband represented that the value of a certain parcels of land was $45,000. ***Id.*** At the time of the execution of the agreement, and without the wife's knowledge, the husband was negotiating to sell the parcels of land to prospective buyers for $800,000. ***Id.*** The parties' property settlement agreement was signed in July 1983; the parcels went under contract in September 1983. ***Id.*** The wife brought an action alleging breach of contract. After a trial, the jury returned a verdict in favor of the wife. ***Id.***

The husband appealed, arguing "that he did not breach the contract created by the property settlement agreement because it did not require the parties to disclose the 'exact amount' of the value of the parties' property." ***Id.*** at 359. We were not persuaded:

> Contrary to this argument, both [the husband] and [the wife] agreed, by signing the document, that they would give

---

[2] As Husband's counsel acknowledged during the hearing: "We're here to focus on the issue of the alleged breach of the Marriage Settlement Agreement." N.T. at 16.

a full and complete disclosure of 'all assets of any nature and of all other facts relating to the subject matter of this agreement.' They also warranted that the lists of assets and liabilities they gave were accurately set forth.

It is unconscionable that [the husband] could now argue to us that these parts of the agreement did not require him to disclose to [the wife] that the true value of the properties was *twenty times* more than what was in the agreement. The disclosure of the 'exact amount' of the value of assets may not be required. ***Fair and full disclosure, however, requires that a reasonable estimate of the worth of the assets must be attempted so that the general financial resources of the parties are not obscured***. Because Husband did not even attempt to fully disclose the value of these properties, he breached the contract.

***Id.*** (emphasis added) (internal citation omitted).

We observe that both Wife and the trial court cite our Supreme Court's decisions in ***Simeone v. Simeone***, 581 A.2d 162, 167 (Pa. 1990) and in ***Stoner v. Stoner***, 819 A.2d 529, 533 (Pa. 2003), which explain why a full and fair disclosure is particularly necessary when parties execute marriage contracts. These two cases are not directly on point here, as they concern the validity of marriage contracts, not whether a contract has been breached. However, they help to illustrate the unique obligations of parties to a marriage contract, given their relationship.

In ***Simeone***, our Supreme Court held that "[p]arties to [prenuptial] agreements do not quite deal at arm's length, but rather at the time the contract is entered into stand in a relation of mutual confidence and trust that calls for disclosure of their financial resources." ***Simeone***, 581 A.2d at 167. In ***Stoner***, our Supreme Court applied the same standard to postnuptial

- 13 -

contracts: "In light of this unique relationship, we affirm the principle in **Simeone** that full disclosure of the parties' financial resources is a mandatory requirement. This requisite acknowledges that the parties stand in a closer relationship beyond that of professional acquaintances negotiating a commercial contract." **Stoner**, 819 A.2d at 533.

Returning to the instant matter, Husband argues he complied with Paragraph 8.01 (relating to full and fair disclosures), because he did not have to disclose his withdrawals from the 529 accounts. He contends Wife waived her right to be appraised of the marital assets in Husband's name. Husband cites Paragraph 8.03 of the Marriage Settlement Agreement, wherein the parties knowingly waived their rights to an inventory and appraisement of the other's financial assets, as well as their right to additional discovery of the assets, property holdings, liabilities, and expectancies of the other party. **See** Marriage Settlement Agreement, at ¶8.03(i)-(iii). Husband maintains Wife knew that the 529 accounts existed in Husband's name and that she simply failed to conduct due diligence before entering into the Agreement. **See** Husband's Brief at 28, 32.

We are not persuaded by Husband's argument that Wife waived her right to be informed of his withdrawals, or that her lack of due diligence should defeat her claim. The 529 accounts were not just any bank accounts in Husband's name. The parties created the 529 accounts for the express purpose of funding the children's education, and the accounts came with various incentives and tax consequences to ensure the same.

Wife had a reasonable expectation that whatever funds the parties deposited into 529 accounts remained untouched. After all, the 529 accounts were always set aside for the children, Husband confirmed that they would continue to be preserved for the children, and he promised that he would not withdraw from these accounts. Thus, to the extent that Wife waived her right to an inventory and appraisement of the 529 accounts, she merely declined an accounting of their precise dollar amount. Wife was content with Husband's full and fair disclosure – that is, a "reasonable estimate of the worth" of the accounts. *See Hess*, 580 A.2d at 359. As the trial court observed, Wife could waive discovery *because* Husband represented that he made a full and fair disclosure. *See* T.C.O. at 7.

Moreover, Wife did not need an exact accounting, because the parties agreed to Paragraph 2.02(H) which preserved children's 529 accounts as they existed during the marriage. She also did not need to know the accounts' exact dollar amount, because the same would not reflect the accounts' true value; the 529 accounts included tuition credits, meaning the children stood to receive an even greater financial benefit than the actual dollar amount. In any event, even if Wife waived her right to be informed of the exact dollar figure, she did not waive her right to be informed of the unilateral withdrawals.

Having concluded that Wife's waivers did not defeat Husband's obligation to make a full and fair disclosure under Paragraph 8.01, the question remains: did Husband violate this provision like the appellant-husband did in *Hess*. The instant matter differs from *Hess* in one respect.

- 15 -

There, the husband violated the agreement's full and fair disclosure provision, because he failed to inform the wife that the value of the assets was twenty times higher than what he disclosed to her. **See Hess**, 580 A.2d at 358. The disclosure was not full and fair, because the representation was not a "reasonable estimate of the worth of the assets." **Id.** at 359. The husband had underrepresented the value.

Here, by contrast, Husband overrepresented the value of the 529 accounts, by failing to disclose his withdrawals. The distinction is inconsequential. Paragraph 8.01 created in Husband an obligation to disclose "a reasonable estimate of the worth" of the 529 accounts. When he did not disclose his withdrawals, he failed to disclose the reasonable estimate of what the accounts were worth. Thus, Husband violated the Agreement.

Having established that Husband failed to comply with the terms of the Agreement, the next question is whether the court's contempt finding was proper under Section 3502(e)(9). Our discussion above demonstrates that the first two elements of the contempt analysis have been satisfied. **See B.A.W.**, 230 A.3d at 406. Husband was on notice that he had to make a full and fair disclosure under Paragraph 8.01; and Husband committed a volitional act when he misrepresented the worth of the 529 accounts by confirming the accounts' purpose and promising not to remove the funds, per Paragraph 2.02(H). The only outstanding question is whether Husband acted with wrongful intent.

The trial court determined that Husband acted with the requisite wrongful intent. First, the court observed that Husband's testimony lacked credibility:

> At the time the parties signed the Marriage Settlement Agreement, Husband had failed to disclose to Wife his removal of funds from the 529 Plans. N.T., at 24, 26. Initially, Husband unequivocally testified, "No, I didn't advise her." ***Id.*** at 24. Husband then reaffirmed his position, stating, "I didn't tell anyone about my withdrawal." ***Id.*** at 26. Husband later backtracked and asserted that he "figured" Wife understood what he was talking about when he told her she was "wasting" the children's college funds by proceeding with the divorce and custody litigation. ***Id.*** at 27-28. The trial court found Husband's testimony in this regard to lack credibility.

T.C.O. at 6-7 (some citations to the record omitted) (capitalization adjusted).

The court determined further that Husband did not disclose his withdrawals in order to induce Wife into signing the Agreement: "Husband knew Wife would not agree to the terms of the Marriage Settlement Agreement if she knew he had removed funds from the 529 Plans." ***Id.*** at 8-9. The court findings were informed by Husband's testimony. Husband testified that he did not inform Wife of the withdrawals, because he felt if he told her anything, "all she would do is pour it on even harder" on him. ***Id.*** at 9 (citing N.T. at 33).

On appeal, Husband repeatedly argues that his actions were not wrongful, because the 529 accounts were in his name. ***See*** Husband's Brief at 18; ***see also*** Husband's Reply Brief at 7. For support, Husband cites our

decision in ***Brooks v. Brooks***, 231 A.3d 1, 7-8 (Pa. Super. 2020), which also addressed 529 accounts.

In ***Brooks***, the parties entered into a marriage settlement agreement, which appointed the father to be the custodian of the children's 529 accounts. The mother brought a petition to enforce the agreement, after she discovered that the father had taken funds from the older child's 529 account and transferred it to the younger child's account. ***Brooks***, 231 A.3d at 4. The father did this, because the older child was taking a year off from school. ***Id.*** The trial court found no violation, and the mother appealed.

We affirmed the trial court. While the parties' marriage settlement agreement "deemed" that 529 accounts belonged to the children, the agreement did not serve to transfer legal ownership of the accounts to the child-beneficiary. ***Id.*** at 8-9. The father was free to manage the accounts in any manner that complied with the agreement. The agreement provided that the father had to manage the account "in his best, good faith, financial discretion." ***Id.*** at 9. The trial court determined that the father abided by this provision when he used the funds from the older child's account and applied them to the younger child's account. We discerned no error. ***Id.***

Returning to the instant case, Husband interprets our decision in ***Brooks*** for the proposition that the 529 accounts never belonged to the children, that he was always the accounts' legal owner, and thus any withdrawals from the funds were allowable. ***See*** Husband's Reply Brief at 9. Husband's reliance is misplaced.

- 18 -

As **Brooks** observes, while 529 accounts might not have belonged to the children, they were still marital assets. **Brooks**, 231 A.3d at 7-8.  Thus, whether they were in Husband's name is immaterial. **See** 23 Pa.C.S.A. § 3501 (defining marital property).  When Husband depleted the accounts, he had not only dispossessed the children of their intended benefit, but Husband also took possession of Wife's marital interest in these assets.  Ultimately, we discern no error, nor abuse of discretion, when the trial court determined that Husband had the requisite wrongful intent when it found him in contempt.  Husband's second appellate issue is without merit.

Having established that the trial court properly held Husband in contempt for violating the full and fair disclosure provision, we address whether the trial court's relief was proper.  The trial court's relief came in separate forms.  First, the trial court awarded Wife $21,572.53 representing the actual amount Husband improperly withdrew from the 529 accounts.  **See** Order of Court, 3/15/21, at ¶3.  Second, the trial court awarded $37,197.57 in "interest,"[3] so as to restore the value of the 529 accounts to where they would have been, had Husband never withdrawn the funds. **Id.**

In his third appellate issue, Husband argues that there was no factual basis to support the amount of interest, that the trial court merely adopted

---

[3] The term "interest" is somewhat of a misnomer here.  This figure does not merely represent the growth of the principal, but the increase in value of the tuition credits.  **See** N.T. at 8.

the amount in Wife's petition. **See** Husband's Brief, at 36. In its Rule 1925(a) opinion, the trial court reasoned that the most appropriate remedy and proper measure of damages was to put the parties back in the position they would have been in, but for Husband's violation. **See** T.C.O. at 11. "This requires Husband to not only repay the funds he removed from the 529 Plans but also to repay the interest that would have accumulated had the funds remained intact." **Id.** The court acknowledged that Wife's request for interest in the amount of $37,197.57 was not discussed in depth. **Id.** However, the court also acknowledged that the amount was not disputed by Husband. **Id.**

Husband's failure to dispute Wife's valuation is dispositive. The Divorce Code does not specify a particular method of valuing assets. The trial court must exercise discretion and rely on, among other documentation, the estimates submitted by both parties. **Smith v. Smith**, 904 A.2d 15, 21-22 (Pa. Super. 2006) (citation omitted). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented." **Smith**, 904 A.2d at 22 (citation omitted).

Here, Wife testified – by way of counsel's summary – that the 529 accounts included tuition credits, which bestowed the accounts with a value greater than their actual dollar amounts. **See** N.T. at 8. Wife's summary testimony identified certain dollar amounts and tuition-rate increases. But her summary testimony also referred to supporting documentation that was attached to her petition. **Id.**; **see also** Wife's Petition for Contempt, to Compel

and for Sanctions, at ¶8, Exhibit A. This supporting documentation consisted of 529 account statements that **Husband provided to Wife**, after she first suspected that he withdrew the funds. **See** N.T. at 8. Although none of these account statements were admitted into evidence, they all were made part of the record. When Wife finished her case-in-chief, Husband's counsel declined to cross-examine her. **Id.** at 11. Indeed, none of Wife's valuations were contested. Husband's sole position at the hearing was that he did not violate the Marriage Settlement Agreement.

On appeal, only **after** the court found that he violated the Agreement, does Husband challenge Wife's valuation of the damages. For guidance on this procedural issue, we turn to **Green v. Green**, 69 A.3d 282 (Pa. Super. 2013) and **Lewis**, 234 A.3d at 722-23. In **Green**, the trial court was tasked with resolving certain equitable distribution issues. The parties had previously agreed to a partial settlement of their marital estate. The parties referred to this prior, partial settlement agreement as "Exhibit 1." Exhibit 1 had been entered into the record, but it had never been formally admitted into evidence. **Green**, 69 A.3d at 283-85. At the hearing, the trial court relied on Exhibit 1 to resolve the outstanding property issues. On appeal, the husband claimed that the court erred by considering Exhibit 1, because it was never formally admitted as evidence. **Id.**

We affirmed the trial court. We observed it should have been clear to the husband that the trial court intended to use Exhibit 1 as record evidence; we noted further that the wife's underlying motion referenced Exhibit 1; and

we recognized that the husband never objected to the court's use of Exhibit 1 at trial. *Id.* at 286-87. We ultimately concluded that the husband waived the issue for failing to raise it in the lower court, pursuant to Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *Id.*

In *Lewis*, a principal question was when the parties notarized their separation agreement. *Lewis*, 234 A.3d at 722. The trial court consulted the parties' separation agreement to determine when the agreement was timestamped by the notary. *Id.* Although the settlement agreement was directly at issue in the trial, it had never made its way into evidence; however, the settlement agreement was attached to the pleadings, and it existed in the record. *Id.* at 723. We relied on *Green* and concluded that the appellant could not raise the issue for the first time on appeal. *Id.*

We find the instant matter to be analogous to *Green* and *Lewis*. Here, Wife attached the supporting account statements in her petition and clearly meant for the court to utilize them. Critically, all the statements belonged to Husband; Wife only obtained them after Husband turned them over to her. Husband never cross-examined Wife, let alone disputed her valuation. His sole argument at trial was that he did not violate the Marriage Settlement Agreement. Only now, on appeal, does Husband contest Wife's valuation.

Thus, to the extent that Husband challenges the underlying documentation, we conclude Husband has waived this claim. *See Green*, 69 A.3d at 287; *see also* Pa.R.A.P. 302(a). Moreover, whether Wife's testimony

and documentation was complete or accurate is immaterial in this case; the court did not abuse its discretion when it accepted Wife's valuation, since that valuation was uncontradicted at trial.  *See Smith*, 904 A.2d at 22.  Husband's third issue merits no relief.[4]

Husband's fourth issue concerns the manner in which the trial court granted Wife relief.  The trial court granted Wife's request that the total value of the 529 accounts (*i.e.*, principal amount of $21,572.53 plus the interest amount of $37,197.57) be added to Husband's existing child support obligation, and that Husband's monthly arrearage payments be increased to $250. *See* Order of Court, 3/15/21, at ¶¶3-4; *see also* Wife's Petition for Contempt, to Compel and for Sanctions, at ¶¶1-7 (Prayer for Relief).

On appeal, Husband argues that the trial court lacked legal authority to convert the contempt award into a child support obligation. *See* Husband's Brief at 35, 38.  Husband reasons that it was inappropriate of the court to fashion such remedy to impede his ability to seek bankruptcy protection.  He

---

[4] We also observe Husband largely failed to cite to any relevant legal authority on this issue, in circumvention of Pa.R.A.P. 2119(b).  It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (citation omitted).

In his Reply Brief, Husband cited *Ney v. Ney*, 917 A.2d 863 (Pa. Super. 2007). *Ney* is distinguishable from the instant matter.  In *Ney*, the trial court erred when it conducted an impromptu internet search during the hearing to challenge the appellant's testimony that he could not find a job. *Ney*, 917 A.2d at 867-68.  Here, the court relied on record evidence, which consisted of Husband's account statements.

also claims the manner of the award is unreasonable, because Wife will now be able to do what she pleases with his payments. The court did not direct Wife to reinvest the payments in the 529 accounts. *Id.* at 35.

In its Rule 1925(a) opinion, the trial court defended the manner of its award by citing the broad equity powers afforded to a court under the Divorce Code. *See* T.C.O. at 11-12; *see also* 23 Pa.C.S.A. § 3323(f); *and see* 23 Pa.C.S.A. § 3502(e). Those sections provide:

> **(f) Equity power and jurisdiction of the court**.--In all matrimonial causes, *the court shall have full equity power* and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and *may grant such other relief or remedy as equity and justice require against either party* or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S.A. § 3323(f) (emphasis added).

Section 3502(e) provides:

> **(e) Powers of the court**.--If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, *in addition to any other remedy available under this part*, in order to effect compliance with its order:
>
> (1) enter judgment;
>
> (2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;
>
> (3) award interest on unpaid installments;

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

(5) require security to insure future payments in compliance with the court's order;

(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;

(7) award counsel fees and costs;

(8) attach wages; or

(9) find the party in contempt.

23 Pa.C.S.A. § 3502(e)(1)-(9) (emphasis added).

The trial court explained that it added its award to Husband's child support arrears to ensure that the funds benefit the children, and because it "also avoids potential discharge in bankruptcy." **See** T.C.O. at 12. Although Wife suggested the idea, she argues that the court's conversion was a "creative" remedy to ensure Husband could not evade his obligations to the parties' children by bankruptcy, remarriage, or other means. **See** Wife's Brief at 35. In addition to the powers mentioned above, Wife provides a third basis for the court's authority. Wife contends that the court's remedy was a constructive trust, which is proper under 23 Pa.C.S.A. § 3505(d). **See id.** at 33-34.

23 Pa.C.S.A. § 3505(d) provides in relevant part:

> If a party fails to disclose information required by the general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. [...].

23 Pa.C.S.A. § 3505(d).

After review, we conclude none of these sections authorizes the court's conversion of the award into a child support obligation. Wife's reliance on Section 3505(d) is inappropriate for several reasons, not the least of which is that she did not file the instant petition under that Section. Rather, Wife clearly sought relief under 23 Pa.C.S.A. § 3502(e). Moreover, we question whether Section 3505(d) (relating to constructive trusts) is even appropriate in this case, given that the issue involves depleted assets, not undisclosed assets. But in any event, we disagree with Wife's portrayal that the court simply utilized the existing child support obligation to "effect a constructive trust." *See* Wife's Brief at 35. Here, the court sourced its authority from Sections 3323(f) and 3502(e). *See* T.C.O. at 11-12.

We conclude that neither of those Sections authorizes the manner of the trial court's relief. These Sections arm the court with an array of equity powers. Although Section 3502(e) lists several remedies, it notes that other remedies are available under "this part" – that is, under the Divorce Code. Nothing in the Divorce Code, however, authorizes the court to convert

- 26 -

otherwise appropriate relief into a child support obligation. Therefore, we conclude the court erred when it did the same.

We further agree with Husband's argument that the manner of the court's relief was erroneous, because it did not restrict the use of his repayments and allowed Wife to use the funds as she wished. *See* Husband's Brief at 35. The trial court explained that it converted the award to a child support obligation to ensure "that the funds will go to their intended purpose, namely, the benefit of the children." *See* T.C.O. at 12. Technically, the trial court's order was silent as to what Wife could do with the funds after she received the monthly repayment. But Husband is correct that relief awarded did not have the effect of replenishing the 529 accounts. This constitutes an abuse of discretion for the following reasons.

As noted above, the 529 accounts were a marital asset. *See Brooks*, 231 A.3d at 7. When Husband depleted these accounts, he not only took possession of his marital interest in the accounts, but also Wife's interest. Of course, Wife had sought to forgo her marital interest in the accounts in order to maintain these assets for their intended purpose – namely, the children's education. *See* Marriage Settlement Agreement at ¶2.02(H); *see also Brooks*, 231 A.3d at 7-8 (citing *Slicing Up the Pie: Property Distribution in Pennsylvania* at 39 (David L. Ladov ed., PBI Press, 3d ed. 2016)).

Thus, once the trial court found Husband violated the Agreement, it had two options. First, the court could have awarded the total, present value of what was lost from the 529 accounts due to Husband's withdrawals (*i.e.*, the

principal and "interest"). But, this award must be conditioned upon Wife depositing the repayments into existing or new 529 accounts. By choosing this option, the court would effectuate the purpose of Paragraph 2.02(H) – that is, to restore the status quo of the accounts.

Second, in the alternative, the court could have ordered Husband to return to Wife her marital share of the amount Husband took from the 529 accounts (*i.e.*, the principal). Under this option, Wife would only be entitled to a share of the actual dollar amount taken, and not the "interest," since the award would no longer constitute reimbursement for lost tuition credits. By choosing this option, the court would merely protect the marital interests of both parties in those accounts. Wife would be free to do what she pleases with her share of these funds. Either of these remedies would have been appropriate under the Divorce Code. **See** 23 Pa.C.S.A. § 3502(e) (authorizing any remedy under the Divorce Code); **see also** 23 Pa.C.S.A. § 3323(f) (granting the court equity power to issue an order to effectuate the purpose of the Divorce Code or to protect the parties' interests).

As the order was written, however, the court awarded the total present value of what was lost from the 529 accounts without restricting Wife's use of the funds. Therefore, if Wife chooses not to deposit the repayments in a 529 account, then Wife will have been awarded both her marital share – as well as Husband's marital share – of these accounts. Moreover, because the court awarded "interest," Wife will have also received a sum far greater than Husband's marital portion. Because the court's order did not require Wife to

deposit the funds in a 529 account, it created an injustice; the order neither effectuated the purpose of Paragraph 2.02(H) (preservation the 529 accounts), nor protected the marital interests of the parties. *See* 23 Pa.C.S.A. § 3323(f).

For these reasons, we conclude Husband's fourth appellate issue has merit. Accordingly, we vacate that portion of the trial court's order converting its award into a child support obligation. On remand, we instruct the court to fashion an order in accordance with the remedies outlined in 23 Pa.C.S.A. § 3502(e)(1)-(9). We further instruct the court to either direct Wife to replenish the 529 accounts with the full repayment amount, or to deny Wife's request for "interest" and direct the return of only Wife's portion of the actual amount Husband depleted.

In his final appellate issue, Husband challenges the trial court's purge conditions. Because the trial court utilized the contempt remedy provided by Section 3205(e)(9), the court set forth the following purge conditions: Husband could purge his contempt by paying his support arrearages every month; by providing written verification of his savings, investments, and/or other accounts to Wife's counsel; by liquidating or borrowing all reasonable sums to satisfy, in full or in part, his child support arrearages; and by remitting to Wife's counsel the sum of $300. *See* Order of Court, 3/15/21, at ¶6.

We have already vacated that portion of the court's order converting the award to a child support obligation. Thus, as a housekeeping measure, we

vacate the purge condition obligating Husband to pay the increased arrears on the obligation.

Husband also argues that the court's other purge conditions be stricken. Again, we observe that Husband has failed to provide any relevant legal authority to support his claim. *See C.H.L.* 214 A.3d at 1276; *see also* Pa.R.A.P. 2119(b). Although it appears the court's other purge conditions align with the court's available remedies under Section 3502(e), we need not address Husband's claim any further.

In sum: we conclude that the court had jurisdiction to enforce the Marriage Settlement Agreement, notwithstanding the fact that it was neither merged nor incorporated into the divorce decree; while we agree with Husband that the court erred by finding him in violation of Paragraph 2.02(H), we conclude the court properly found him in contempt for his failure to comply with Paragraph 8.01; we conclude that Husband largely waived his challenge to Wife's "interest" valuation, but that the valuation was ultimately within the court's discretion, given that Husband did not dispute it at trial; finally, we conclude the court erred when it converted its award into a child support obligation and then failed to either restrict Wife's use of the full repayment amount, or limit the award to Wife's equitable, marital share of the amount Husband took from these accounts.

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2022