J-S33032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER L. HARE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN W. HARE | : | |
| | : | |
| Appellant | : | No. 738 MDA 2024 |

Appeal from the Order Entered April 29, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2015-FC-002396-03

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: NOVEMBER 25, 2024**

Appellant John W. Hare (Father) appeals from orders modifying child custody and finding him in contempt for violating a prior custody order.[1]  After review, we affirm both orders.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> [Jennifer L. Hare (Mother)] and [Father] are the natural parents of [Child] born in 2014.  This matter came to court on Father's

---

[1] Generally, taking one appeal from separate orders is improper and discouraged.  ***See TCPF Ltd. Partnership v. Skatell***, 976 A.2d 571, 574 n.4 (Pa. Super. 2009).  The orders on appeal in this matter were both filed on April 29, 2024, at the same trial court docket number (2015-FC-002396-03).  ***Compare id.***, **with *Commonwealth v. Young***, 265 A.3d 462, 477 (Pa. 2021) (holding that where one or more orders resolves issues arising **on more than one docket**, separate notices of appeals must be filed); ***see also*** Pa.R.A.P. 341(a).  Although Father's combined appeal presents a procedural irregularity, in the interest of judicial economy in this Children's Fast Track case, we will address the merits of both appeals.  ***See TCPF Ltd. Partnership***, 976 A.2d at 574; ***see also*** Pa.R.A.P. 902.

petition for modification and contempt and Mother's counterpetition for modification and contempt. Parents were subject to a stipulated order for custody of December 9, 2022, which granted parents shared legal custody, Mother primary physical custody during the school year, and Father [partial] physical custody during the summer.

A custody trial was held on April 19, 2024, and April 25, 2024, addressing the parties' petitions for modification and contempt. Both parties testified and were represented by counsel. Additionally, custody evaluator Dr. Kasey Shienvold testified credibly regarding Child's expressed preference, that there was no indication that Mother was alienating Child from Father[] and other matters. On April 19, 2024, the court interviewed Child *in camera* for a third time, and Child remained consistent in her stated preference to have the same schedule as during the school year all year long.

The court heard testimony from Mother regarding Father cancelling Child's [medical and dental] appointments without notifying Mother, deleting Mother's contact information and listing himself as primary [contact] instead at one provider without notice, and getting into a verbal altercation at one of Child's appointments in which Father and Stepmother accused Mother of lying in front of Child. At that appointment, Child needed bloodwork before her upcoming appointment on Monday of the following week. Mother selected the only appointment that would enable Child to have bloodwork done before the medical appointment and texted Father who was in the waiting room with Stepmother and their other children. Based on Father's response text, Mother testified that she could tell he was upset. Mother testified that when she came into the waiting room and tried to explain to Father why the appointment was selected, Stepmother accused Mother of lying. Mother testified that Father jumped up and shouted also accusing Mother of lying. Mother testified that medical staff had to ask Father and Stepmother to leave.

After hearing the testimony over the course of two days and considering the other evidence presented, on April 25, 2024, the court issued a custody order affirming the stipulated order of December 9, 2022[,] with several exceptions, including that parents continue to share legal custody, but Mother was granted sole legal custody over Child's medical and dental issues only. The court made this decision, in part, because the testimony and

evidence showed that Father encourages conflict regarding Child's medical and dental appointments.

Regarding the contempt petitions, the court issued an order finding that Mother was not in contempt and that Father was in contempt of the December 9, 2022 stipulated order. In interviewing Child, hearing the testimony, reading messages on Our Family Wizard, etc., the court found that Mother's testimony was credible. The court found that Father's allegations against Mother were not supported by the evidence and found that Father had violated the court's stipulated order of December 9, 2022, as explained in the contempt order, and sanctioned Father accordingly.

Trial Ct. Op., 6/21/24, at 1-3 (citations omitted and some formatting altered).

Father filed a timely appeal challenging both the custody order and the contempt order. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father presents the following issues:

1. Whether the trial court erred as a matter of law in failing to appropriately consider and/or assign proper weight to the sibling factor indicating that such was not warranted as the siblings were not "biological"?

2. Whether the trial court abused its discretion or erred as a matter of law in reducing Father's time with the Child to minimal when the evidence presented in its entirety did not support the court's findings and final order?

3. Whether the trial court abused its discretion and/or committed an error of law in awarding Mother sole legal custody as to medical and dental matters for the Child when the evidence did not support such a determination?

4. Whether the trial court erred as a matter of law and/or abused its discretion with respect to its final contempt findings and order?

Father's Brief at 4 (some formatting altered).

For ease of discussion, we address Father's first three claims concerning the custody order after which we will consider Father's fourth issue concerning the contempt order.

**Custody**

When reviewing a trial court's custody order, our standard and scope of review are as follows:

> We review custody orders for an abuse of discretion. We will not find such an abuse merely because we would have reached a different conclusion. Rather, an abuse of discretion occurs only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will.

> Moreover, our scope of review is broad. Because this Court does not make independent factual determinations, however, we must accept findings of the trial court that are supported by competent evidence of record. Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. We are not, however, bound by the trial court's deductions or inferences. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. As this Court has held, it is not this Court's function to determine whether the trial court reached the right decision; rather, we must consider whether, based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion.

> When a trial court orders a form of custody, the best interest of the child is paramount. The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody

determination. It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.

***Taylor v. Smith***, 302 A.3d 203, 206–07 (Pa. Super. 2023) (citations omitted and formatting altered).

The factors that the court must consider when awarding custody are as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[2]

A trial court must delineate the reasons for its decision when making an award of custody either on the record or in a written opinion. However, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.

---

[2] These are the custody factors that were in effect at the time the trial court made its decision. Effective August 13, 2024, Section 5328(a) was subsequently reordered and amended. *See* 23 Pa.C.S. § 5328 (amended April 15, 2024, P.L. 24, No. 8, § 3, effective in 120 days).

*Taylor*, 302 A.3d at 208 (citations and quotation marks omitted). However, "the amount of weight that a court places on any one factor is almost entirely discretionary." *O.G. v. A.B.*, 234 A.3d 766, 777 (Pa. Super. 2020). Further, "while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the expert's recommendations, its independent decision must be supported by competent evidence of record." *M.A.T. v. G.S.T.*, 989 A.2d 11, 20 (Pa. Super. 2010) (citation omitted). "[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *D.R.L. v. K.L.C.*, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted); *see also Taylor*, 302 A.3d at 206.

We note that "physical custody" is "[t]he actual physical possession and control of a child." 23 Pa.C.S. 5322(a). Primary physical custody is "[t]he right to assume physical custody of the child for the majority of time[,]" and partial physical custody is "[t]he right to assume physical custody of the child for less than a majority of the time. *Id.* Further, legal custody is defined as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." *Id.* As stated, the trial court must consider all of the Section 5328(a) custody factors when "ordering any form of custody," and requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a).

### 1. Sibling Relationships

Father first argues that the trial court erred in failing to properly consider the relationships Child has with stepsiblings, and he claims that this was a violation of 23 Pa.C.S. § 5328(a)(6). Father's Brief at 8. Father contends that the trial improperly concluded that Section 5328(a)(6) concerning relationships with siblings does not apply because the children in this case are Child's stepsiblings as opposed to biological siblings. *See id.* at 8-10.

Mother responds that despite the trial court's phrasing and mentioning of stepsiblings, there was no abuse of discretion. Mother's Brief at 10. Mother contends that the trial court properly weighed the relevant custodial factors, including sibling relationships under Section 5328(a)(6), and ultimately found that this factor was not critical to its determination. *See id.* at 12-13.

The record reflects that the trial court addressed Section 5328(a)(6) as follows:

> Factor 6. The child/sibling relationships. Father in his case has made much of the relationship between [Child] and her stepsiblings. The statute says siblings, it doesn't say stepsiblings. And I think -- and the [c]ourt believes that, again, [Dr.] Shienvold dealt with this well in his evaluation in so far as [Child] simply doesn't get the kind of attention in a family setting of five than she does in a family setting of one. Having said that, this is really not a strong factor one way or the other.

N.T., 4/25/24, at 99 (some formatting altered).

In its Rule 1925(a) opinion, the trial court further explained:

> The court denies that it erred by failing to appropriately consider or assign proper weight to the sibling factor or any other factor. The court cited custody evaluator Shienvold's testimony regarding

- 8 -

Child's interactions with her four stepsiblings at Father home and the greater amount of attention Child feels she receives in a home with one child rather than five. At any rate, the court explained that the sibling factor was not a strong factor one way or the other. Thus, other factors carried greater weight. The court asserts that it adequately weighed the custody factors, the testimony, and all over evidence in this case. The court's custody order is well-supported by the evidence and its analysis of all custody factors.

Trial Ct. Op., 6/21/24, at 7 (citation omitted).

After review, we discern no abuse of discretion. *See Taylor*, 302 A.3d at 206. Father is correct that the trial court mentioned that the statute used the word "siblings" rather than "stepsiblings." N.T., 4/25/24, at 99. We note that the 2010 comment to Section 5328(a)(6) provides: "Subsection (a)(6) is intended to include full-blood siblings, half-blood siblings, step-siblings[,] and adoptive siblings." 23 Pa.C.S. § 5328(a)(6), cmt. Further, on this record it is clear that the trial court carefully considered the relationship between Child and her stepsiblings. Accordingly, Father's claim is meritless. Specifically, the trial court referred to Dr. Shienvold's evaluation in which he opined that Child's relationship with her stepsiblings was typical of any sibling relationships. *See* N.T., 4/19/24, at 33; N.T., 4/25/24, at 99. Dr. Shienvold testified that the biggest difference between Child living in Father's house and Child living in Mother's house is that her stepsiblings reside at Father's house, and there are more people in Father's house. *See* N.T., 4/19/24, at 34. The trial court considered the evidence and concluded that because of the number of people living at Father's house, Child receives more individual attention when there is one child in the house as opposed to five. *See* N.T., 4/25/24,

at 99; Trial Ct. Op., 6/21/24, at 7. However, contrary to Father's argument that the trial court discounted Child's relationship with the other children because they were not "biological"[3] siblings and failed to properly consider Section 5328(a)(6), the record reflects that the trial court expressly stated its consideration of this factor and the evidence of record, and the trial court concluded that after weighing the custody factors, Section 5328(a)(6) was not a strong factor one way or the other. **See** N.T., 4/25/24, at 99; Trial Ct. Op., 6/21/24, at 7. Accordingly, we find that Appellant's argument regarding Section 5328(a)(6) lacks merit, and we conclude that there was no abuse of discretion in the trial court's consideration of Section 5328(a)(6). **See Taylor**, 302 A.3d at 206. Therefore, no relief is due to Father on this claim.

### 2. Factors Favoring Mother

Second, Father argues that the trial court abused its discretion in entering a custody order that substantially reduced his time with Child despite the evidence presented. Father's Brief at 11. Father contends that the trial court ignored Dr. Shienvold's evaluation and abused its discretion in considering the evidence relative to the custody factors under Section 5328(a). **See id.** at 11-19. Father asserts that the trial court abused its discretion in finding the evidence of record in favor of Mother with respect to Sections 5328(a)(1), (3), (5), (7), (8), (10), and (13). **See id.** Father asserts

---

[3] Father's Brief at 8.

that the "actual credible evidence" did not support the trial court's conclusions. *See id.* at 19.

The trial court addressed the Section 5328(a) custody factors on the record at the April 25, 2024 hearing as follows:

> [Factor 1.] The first factor is which party is more likely to encourage and permit frequent and continuing contact between the child and other party. The court finds that Mother has been more cooperative in encouraging [Child] to have a good relationship and contact with Father and his family. The court took particular note of the fact that Mother has and continues to have [Child] regularly see the paternal grandparents even though . . . Father doesn't have [Child] see the paternal grandparents. Therefore, this is a pretty strong factor in favor of Mother.
>
> Factor [2]. Present or past abuse. The court heard no testimony on that, so that is not a factor.
>
> Factor 2.1[.] [C]hild abuse and protective services information. Again, the court heard no testimony on that and, therefore, that is not a factor.
>
> Factor 3. Parental duties performed by each party on behalf of the child. While both parents are active in [Child's] life, it is clear this was brought out in [Dr.] Shienvold's evaluation that . . . Child does look to Mother for parental duties and is, frankly, more strongly bonded with Mother. So this is a factor in favor of Mother.
>
> Factor 4. The need for stability and continuity in the child's education, family life, and community life. Both parties seem stable, so this really is a neutral factor.
>
> Factor 5. The availability of extended family. Mother has extended family in addition to her husband's extended family. Father's wife's extended family is available, but Father has cut himself off from his own family. So this has to be a factor in favor of Mother.
>
> Factor 6. The child/sibling relationships. Father in his case has made much of the relationship between [Child] and her stepsiblings. The statute says siblings, it doesn't say stepsiblings. And I think -- and the court believes that, again, [Dr.] Shienvold

dealt with this well in his evaluation in so far as [Child] simply doesn't get the kind of attention in a family setting of five than she does in a family setting of one. Having said that, this is really not a strong factor one way or the other.

Factor 7. The well-reasoned preference of the child. The court has fashioned an order that is very much in line with the preference expressed by [Child]. The court notes that [Child] has expressed this preference to the court in the court's interview as well as to the conciliator when the conciliator interviewed her some months ago and apparently to the custody evaluator also. So the court believes it is a well-reasoned preference and finds [Child's] level of maturity and judgment to be greater than her state at the age of nine. Accordingly, this is a strong preference in favor of the order the court has ordered.

Factor 8. The attempts of a parent to turn the child against the other parent except for when domestic violence is present. Father wants the court to believe that Mother is alienating the child against him. Again, the evaluation dealt with that extremely well. The court found nothing untoward being done by Mother to try to alienate . . . [C]hild against Father. The very fact that Mother would encourage and make happen [Child] seeing paternal grandparents flies in the face of any alienation that Mother might be accused of in terms of Father and his family. The fact that Father accuses Mother of this is unfortunate and therefore a mild factor in favor of Mother.

Factor 9. Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs. As stated in factor number 3, both parties attended to the child's needs well and are stable. So this really is not a factor.

Factor 10. [W]hich party is more likely to attend to the daily, physical, emotional, developmental, educational, and special needs of the child. This is a little different than factor nine. In all candor, the court is troubled by Father's playing fast and loose with the truth. One of the things that a child needs to be raised in for educational and emotional and developmental upbringing, it's very, very important to have integrity and honesty. Father's dealing with that throughout this trial has been fast and loose and the court cannot help but believe that [Child's] learning to value integrity is going to be better taught and certainly better caught by Mother than by Father. So this is a factor in favor of Mother.

Factor 11. The proximity of the residences of the parties. That's not a significant factor at all.

Factor 12. Each party's availability to care for the child, make appropriate childcare arrangements. Both parties have made excellent childcare arrangements. So this is a neutral factor.

Factor 13. The level of conflict between the parties and the willingness and ability for the parties to cooperate with one another. Much like the first factor, this is a factor in favor of Mother. The Court was puzzled during Father's direct examination when Father would testify about text or Our Family Wizard entries in which he thought Mother was being unreasonable, but the court reading those texts or Our Family Wizard entries looked to the court like it was Father who was unreasonable and not Mother. And the court was puzzled as to why Father used them as exhibits quite frankly. Father, he seems to encourage conflict, I don't know why, but he needs to really work on that and the court would highly advise him to get some kind of therapy on how to cooperate and co-parent with . . . Mother. So again, this is a factor in favor of Mother.

Factor 14. History of drug or alcohol. This is not a factor.

Factor 15. Mental and physical condition of a party or member of a party's household. Not a factor.

Factor 16. Any other relevant factor. Not a factor.

N.T., 4/25/24, at 98-103 (some formatting and capitalization altered).

As noted, Father asserts that the trial court abused its discretion in weighing the evidence in favor of Mother concerning Sections 5328(a)(1), (3), (5), (7), (8), (10), and (13). *See* Father's Brief at 11-19.

With respect to Section 5328(a)(1), Father contends that Mother blocked him from accessing Child's school information on the school's "Skyward" account; there were difficulties in having Mother share information about Child with him and asserts that Child was precluded from bringing her computer and flute to Father's house; Father was not provided information

about field trips, and Father argues that he was not informed about legal decisions and medical decisions involving Child. *See id.* at 15-16 (citing N.T., 4/19/24, at 61-70, 108-10).

However, in challenging the trial court's findings, Father is asking this Court to reweigh the evidence and reassess credibility. *See id.* at 15-16. It is not the function of this Court to reweigh the evidence, and we reiterate that we will not disturb the trial court's determinations concerning the credibility and weight of the evidence absent an abuse of discretion. *See Taylor*, 302 A.3d at 206; *see also Packirisamy v. Suresh*, 858 EDA 2020, 2021 WL 3702580, at *18 (Pa. Super. filed Aug. 20, 2021) (providing that when addressing the trial court's findings concerning the custody factors under Section 5328(a), this Court will not reweigh the evidence) (unpublished mem.).[4] Further, the weight that the court places on any factor under Section 5328(a) is discretionary. *See O.G.*, 234 A.3d at 777. We conclude that Father has failed to establish that the trial court abused its discretion or committed an error of law with respect to its findings under Section 5328(a)(1). Accordingly, Father is not entitled to relief. *See Taylor*, 302 A.3d at 206; *O.G.*, 234 A.3d at 777.

Regarding Sections 5328(a)(3) and (5), Father simply restated the trial court's findings, but he failed to develop any argument. *See* Father's Brief at 16-17. We note that the failure to develop an argument with citation to, and

---

[4] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

analysis of, pertinent authority results in waiver of that issue on appeal. **See Zabrosky v. Smithbower-Zabrosky**, 273 A.3d 1108, 1121 n.4 (Pa. Super. 2022). Accordingly, we conclude that Father's claims concerning Section 5328(a)(3) and (5) are waived on appeal. **See id.**

With respect to Section 5328(a)(7), Father questions the accuracy of the trial court's findings and notes that statements that Child made to the court were not made under oath. **See** Father's Brief at 17-18. However, Father provides no argument on these points. **See id.** at 17. Accordingly, we are constrained to conclude that this claim is waived.[5] **See Zabrosky**, 273 A.3d at 1121 n.4.[6]

Father next challenges the trial court's conclusions under Section 5328(a)(8). Father contends that the trial court ignored Dr. Shienvold's conclusion that Mother is not blameless in this family dynamic or without fault, and he cites to a statement Dr. Shienvold made concerning Mother's feelings impacting Child's feelings. **See** Father's Brief at 18. Although Father may disagree with the trial court's conclusions, he has not developed any legal argument concerning how the trial court abused its discretion in reaching its

_____

[5] Additionally, Father did not object to the trial court questioning Child without being under oath. **See** N.T., 4/19/24, at 5-21. Accordingly, Father's claim is waived before this Court. **See** Pa.R.A.P. 302(a).

[6] In any event, had we not concluded that the issue was waived, we would conclude that Father has not established how the trial court's finding with respect to Section 5328(a)(7) was an abuse of discretion. As stated, we will not disturb the trial court's determinations absent an abuse of discretion. **See Taylor**, 302 A.3d at 206.

findings concerning Section 5328(a)(8); therefore waiver of this issue is appropriate, and no relief is due. **See Zabrosky**, 273 A.3d at 1121 n.4.

Next, under Section 5328(a)(10), Father states that the trial court concluded that Father played "fast and loose" with honesty and integrity, and the trial court stated that honesty and integrity were important for Child's development. **See** Father's Brief at 18. Father then contends that this finding under Section 5328(a)(10) "flies in the face of what the trial court opined in Factors 4 (both parties seem stable) and 9 (both parties attended to the child's needs well and are stable)," as well as Dr. Shienvold's conclusions." **See id.** at 18-19 (some formatting altered). However, Father provides no additional argument or citation to relevant legal authority on this claim. Accordingly, we conclude that Father's failure to develop an argument on this issue results in waiver. **See Zabrosky**, 273 A.3d at 1121 n.4.

Finally, Father contends that the trial court's conclusion with respect to Section 5328(a)(13) should not place blame on Father, and he asserts that the trial court's conclusion is contrary to Dr. Shienvold's conclusion that both Mother and Father contributed to the conflict between the parties. **See** Father's Brief at 19. Father makes no further argument on this point and has not shown how the trial court abused its discretion with respect to its conclusion that the factor in Section 5328(a)(13) weighed in favor of Mother. As we have stated, we will not disturb the trial court's determinations concerning the credibility and weight of the evidence absent an abuse of discretion. **See Taylor**, 302 A.3d at 206.

After review of the record, we find no merit to Father's argument that the trial court ignored Dr. Shienvold's opinion or that the trial court abused its discretion in its consideration of the relevant custody factors. As fact finder, the trial court was free to believe all, part or none of witness testimony, including expert witness testimony. The record reflects that the trial court duly considered Dr. Shienvold's opinion along with other relevant evidence. **See** Trial Ct. Op. at 2, 7. We note that legal precedent is clear that expert testimony is not binding, therefore the trial court was free to accept all or part or none of Dr. Shienvold's recommendations. **See M.A.T.**, 989 A.2d at 20. Moreover, the record reflects that the trial court considered each custody factor under Section 5328(a) and the best interests of Child, stated its consideration of the evidence presented, and it found that Sections 5328(a)(1), (3), (5), (7), (8), (10), and (13) weighed in Mother's favor. **See** N.T., 4/25/24, at 98-103. The trial court's conclusions concerning these factors and its findings regarding the best interests of Child are reasonable and supported by the record. **See Taylor**, 302 A.3d at 206; **M.A.T.**, 989 A.2d at 20. Accordingly, we find no abuse of discretion, and Father is not entitled to relief. **See Taylor**, 302 A.3d at 206; **see also O.G.**, 234 A.3d at 777.

### 3. Medical and Dental Decisions

In his third issue, Father argues that the trial court abused its discretion and erred as a matter of law in awarding sole legal custody to Mother with respect to medical and dental decisions. **See** Father's Brief at 19-20. Father

contends that the trial court's decision is not supported by Dr. Shienvold's opinion or the evidence of record. *See id.* at 20-21.[7]

We reiterate that legal custody is "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." 23 Pa.C.S. 5322(a). The trial court must consider all of the Section 5328(a) custody factors when ordering any form of custody, and the court must give "weighted consideration to those factors which affect the safety of the child[.]" *Id.*

As stated above, the trial court properly addressed each of the Section 5328(a) factors. *See* N.T., 4/25/24, at 98-103. Further, although Dr. Shienvold recommended shared legal custody as part of his custody evaluation,[8] as we have discussed, Dr. Shienvold's opinion is not binding on the trial court. *See M.A.T.*, 989 A.2d at 20. Notably, contrary to Father's assertions, Dr. Shienvold did not conclude that Father was blameless in the conflict between the parties. *See* R.R. 102a. Dr. Shienvold stated:

_____

[7] We may cite to the parties' reproduced record for the parties' convenience. Additionally, Dr. Shienvold's Comprehensive Custody Evaluation does not appear in the certified record, but Father included it in his reproduced record. Mother has not objected to the accuracy of the reproduced record and cites to it in her brief. *See* Mother's Brief at 10-11. Accordingly, we will consider the copy of Dr. Shienvold's evaluation that is in the reproduced record in our review of this matter. *See*, *e.g.*, *C.L. v. M.P.*, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*) (noting that "[w]hile the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record. As their veracity is not in dispute, we rely on the copy contained within the Reproduced Record" (citation omitted)).

[8] *See* R.R. 104a.

[Father] alleged that [Mother] is restrictive in her gatekeeping of [Child] and interfered with phone calls and his ability to be active in [Child's] life outside of school. A review of the documentation provided did not support those allegations. It is true that there are gaps in the co-parenting and that [Mother] can be more organized or communicating at times, but there is little evidence to support [Father's] insistence that [Mother] is interfering or prohibiting his relationship with [Child]. [Mother] filing for emergency custody in April 2022 appears to be rational and reasonable considering [Father's] position that his nine-year-old stepson was appropriate to be the responsible party in the home with [Child] while [Father] and his wife were at work. Furthermore, the communications between the parties showed that each of them could be hostile and interrogating at times, but that [Father's] communications on the whole appeared to be the angrier and more hostile in their tone.

*Id.* at 103a.

The trial court further explained that it awarded Mother sole legal custody with respect to Child's medical and dental decisions in part "because the testimony and evidence showed that Father encourages conflict regarding Child's medical and dental appointments." Trial Ct. Op., 6/21/24, at 3. Importantly, the trial court specifically addressed the conflict between the parties as part of its discussion of factor 13 under Section 5328(a), and stated that Father "seems to encourage conflict, I don't know why, but he needs to really work on that and the court would highly advise him to get some kind of therapy on how to cooperate and co-parent with . . . Mother. So again, this is a factor in favor of Mother." N.T., 4/25/24, at 102.

Critically, the trial court explicitly included in its order that Father was welcome to attend Child's appointments, if he did not interfere with Mother's

- 19 -

decision making concerning medical and dental issues. *See* Order, 4/29/24, at 2.

We conclude that the trial court properly considered the evidence of record, including Dr. Shienvold's recommendations, in making its determination to award Mother sole legal custody regarding Child's medical and dental decisions. We reiterate that it is not the function of this Court to reweigh the evidence. *See Taylor*, 302 A.3d at 206; *Packirisamy*, 2021 WL 3702580, at \*18. Here, the trial court's decision is reasonable and supported by the record, therefore, we discern no abuse of discretion. *See Taylor*, 302 A.3d at 206; *M.A.T.*, 989 A.2d at 20. Accordingly, Father is not entitled to relief.

## **Contempt**

In his final issue, Father challenges the trial court's order finding him in contempt of the December 9, 2022 stipulated custody order.[9] Father's Brief at 22. Father argues that his actions did not satisfy the elements necessary to constitute civil contempt. *See id.* at 24.[10]

---

[9] As a sanction, the trial court ordered Father to reimburse Mother $3,600 in counsel fees. *See* Order, 4/29/24, at 6. We note that Father has solely challenged the finding of contempt in this appeal and has not presented nor developed any argument with respect to the imposed sanction of $3,600 for Mother's attorney's fees. Therefore, any purported claim concerning the contempt sanction is waived. *See Zabrosky*, 273 A.3d at 1121 n.4.

[10] In response to Mother's assertions of contempt against him, Father argues that Mother acted in contempt. *See* Father's Brief at 22. As noted above, in its order addressing the contempt petitions filed by each party, the trial court

*(Footnote Continued Next Page)*

This Court has explained that "[i]n civil contempt proceedings, the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." *Hanbicki v. Leader*, 294 A.3d 1234, 1241 (Pa. Super. 2023) (citation omitted).

> To be punished for contempt, a party must not only have violated a clear order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

> In other words, the alleged contemnor must know of the prohibited conduct, with any ambiguities, omissions, or uncertainties in the order construed in favor of the alleged contemnor, the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent.

> \* \* \*

> [A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Unless the evidence establishes an intentional disobedience or an

_____

concluded that Mother was not in contempt. *See* Contempt Order, 4/29/24, at 5. To the extent that Father argues that the trial court erred or abused its discretion in finding that Mother was not in contempt, we conclude that claim is waived for failure to develop an argument. *See Zabrosky*, 273 A.3d at 1121 n.4.

intentional disregard of the lawful process of the court, no contempt has been proven.

*Id.* (citation omitted and formatting altered). We review a trial court's finding of civil contempt for an abuse of discretion. *See id.* at 1240. "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." *Id.* (citation omitted).

The December 9, 2022 custody order provides, in relevant part, that the parties are not to disparage one another to Child, and that Mother and Father will equally divide any out-of-pocket medical expenses. *See* Order, 12/9/22, at 10-11. In her petition for contempt, Mother alleged that Father was in contempt of the December 9, 2022 order for multiple incidents. *See* Mother's Answer and New Matter and Counter Petition for Contempt, 8/4/23, at 8-13. Importantly, Mother claimed that Father violated the December 9, 2022 custody order based on his actions in the doctor's office on April 12, 2023, where Father and Stepmother accused Mother of being a liar in front of Child. *See id.* at 9. Further, Mother alleged that Father was in contempt for failing to pay his half of eleven outstanding medical bills for Child. *See id.* at 10.

The trial court concluded that Father's actions in the doctor's office on April 12, 2023 violated the non-disparagement requirement from the December 9, 2022 order. The court further concluded that Father was in contempt for failing to pay his share of Child's medical bills in violation of the

December 9, 2022 order, and that his purported explanations were merely excuses. *See* Contempt Order, 4/29/24, at 5-6. Regarding the competing contempt petitions, the trial court credited Mother's testimony concerning Father's contemptuous behavior but found that Father's contempt allegations against Mother were not supported by competent evidence. On this record, the trial court properly concluded that Father had notice of the December 9, 2022 custody order, Father's violations were volitional, and that Father's violations were done with wrongful intent, therefore the trial court sanctioned Father accordingly. *See* Trial Ct. Op., 6/21/24, at 3, 8.

We note that after stating the factual background of these two instances of contempt, Father argues, "Father respectfully asserts that the evidence even taken into consideration in the most favorable light to Mother does not meet the necessary burdens." Father's Brief at 24. After review, we conclude that Father's bald assertions fail to demonstrate how the trial court abused its discretion in determining Father in contempt in that Father has not developed any argument supported by the record and legal authority for his assertions. Accordingly, we conclude that this issue is waived, accordingly Father is not entitled to relief. *See Zabrosky*, 273 A.3d at 1121 n.4.

For the reasons herein stated, we affirm the trial court's custody and contempt orders entered on April 25, 2024, and docketed on April 29, 2024.

Orders affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2024